JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Allen, Halimah

**DEFENDANTS**
Univ. of Penn Police Department, Ofc. Julia Umbrell (individually and in her official capacity, and Ofc. John Doe (individually and in her official capacity

**(b)** County of Residence of First Listed Plaintiff   **Dekalb County**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   **Philadelphia**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
MFI Law Group, PLLC
1448 South Street, Suite 200
Philadelphia, PA 19146, (215) 735-2357

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. Section 1983

Brief description of cause:
Defendants violated Plaintiff Constitutional rights to be free from unlawful search and seizure and excessive force.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*

JUDGE

DOCKET NUMBER

DATE
12/30/14

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          **DEC 3 0 2014** JUDGE          MAG. JUDGE

**UNITED STATES DISTRICT COURT**

14    7334

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: _3603 Mecklinburg Place, Decatur GA 30032_

Address of Defendant: _Franklin Building 3451 Walnut Street, suite 421_

Place of Accident, Incident or Transaction: _3100 block of Market Street, Phila, PA_
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))    Yes☐    No☑

Does this case involve multidistrict litigation possibilities?    Yes☐    No☑
*RELATED CASE, IF ANY:*
Case Number: _____    Judge _____    Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
Yes☐    No☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
Yes☐    No☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
Yes☐    No☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
Yes☐    No☑

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☑ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify) _____

**ARBITRATION CERTIFICATION**
*(Check Appropriate Category)*
I, _Miriam Tolen_ , counsel of record do hereby certify:
☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: _12/30/14_    _Miriam Tolen_    _208979_
                        Attorney-at-Law                Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _12/30/14_    _Miriam Tolen_ DEC 30 2014    _208979_
                        Attorney-at-Law                Attorney I.D.#

CIV. 609 (5/2012)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

*Halimah Allen*

              v.

*University of Pennsylvania
Police Department, et al.*

         :
         :
         :
         :

CIVIL ACTION

**14   7334**

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.             ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.        ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.              ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)

(f) Standard Management – Cases that do not fall into any one of the other tracks.    ( ✓ )

_____   _____   _____
12/30/14                                                                    
**Date**               **Attorney-at-law**       **Attorney for**

_____   _____   _____
215-735-2357        215-735-2358       mislam@mfilawgroup.com
**Telephone**               **FAX Number**         **E-Mail Address**

(Civ. 660) 10/02

DEC 30 2014

$400

# TJS
## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Halimah Allen<br>3603 Mecklinburg Place,<br>Decatur, GA 30032<br>     *Plaintiff*, | CIVIL ACTION   **14**   **7334**<br><br>CASE NO. |
|      v. | |
| University of Pennsylvania<br>Police Department<br>Franklin Building<br>3451 Walnut Street Suite 421<br>Philadelphia, PA 19104<br>     and | JURY TRIAL DEMANDED |
| University of Pennsylvania<br>Police Department<br>133 S. 36th Street<br>Philadelphia, PA 19104<br>     and | |
| Police Officer Julia Umbrell<br>(individually and in her official capacity)<br>Franklin Building<br>3451 Walnut Street Suite 421<br>Philadelphia, PA 19104<br>     and | |
| Police Officer John Doe<br>(individually and in his official capacity)<br>Franklin Building<br>3451 Walnut Street Suite 421<br>Philadelphia, PA 19104<br>     *Defendants*. | |

Plaintiff HALIMAH ALLEN (hereinafter "Plaintiff"), by and through her attorneys, MFI Law Group, PLLC, hereby brings this action under 42 U.S.C. § 1983 to redress her civil and legal rights, and alleges as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action in which Plaintiff seeks relief for Defendants' violations of her rights secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983, by the United States Constitution, including its First, Fourth and Fourteenth Amendments, and by the laws and Constitution of the State of Pennsylvania. Plaintiff seeks compensatory and punitive damages, an awards of costs, interest and attorney's fees, and such other and further relief as this Court deems just and proper.

## JURISDICTION AND VENUE

2. This action arises under 42 U.S.C. §1983, and this Court has jurisdiction pursuant to 28 U.S.C. §1343 and supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. §1367.

3. Venue is this District is proper under 28 U.S.C. §1391 (b) and (c) in that Defendant UNIVERSITY OF PENNSYLVANIA POLICE DEPARTMENT (hereinafter "Defendant") is administratively located within the Eastern District of Pennsylvania, and the events giving rise to this claim occurred within the boundaries of the Eastern District of Pennsylvania.

## PARTIES

4. At all times relevant to this action, Plaintiff is a resident of Fulton County, Georgia.

5. Defendant is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of Pennsylvania. It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant assumes the risks incidental to the maintenance of a police

force and the employment of police officers. Defendant was at all times relevant herein the public employer of Defendant Police Officer Julia Umbrell ("Officer Umbrell") and Defendant Police Officer John Doe ("Officer Doe").

6. Defendant Officer Umbrell is and was at all times relevant herein duly appointed and acting officer, servant, employee, and agent of the University of Pennsylvania Police Department. At all times relevant herein, the individual defendant was acting under color of the laws, statutes, ordinances, regulations, policies, customs and/or usages of the State of Pennsylvania and the University of Pennsylvania Police Department, in the course and scope of her duties and functions as an officer.

7. Defendant Officer Doe is and was at all times relevant herein duly appointed and acting officer, servant, employee, and agent of the University of Pennsylvania Police Department. At all times relevant herein, the individual defendant was acting under color of the laws, statutes, ordinances, regulations, policies, customs and/or usages of the State of Pennsylvania and the University of Pennsylvania Police Department, in the course and scope of his duties and functions as an officer.

8. By the conduct, acts, and omissions complained of herein, Defendant Officers Umbrell and Doe violated clearly established the constitutional standard under the First, Fourth, and Fourteenth Amendments to the United States Constitution of which a reasonable police officer under the circumstances would have known.

## NOTICE OF CLAIM

9. Plaintiff timely filed a Notice of Claim with the University of Pennsylvania Police Department setting forth the facts underlying Plaintiff's claim against Defendant and Officer Umbrell.

10. To date, Plaintiff has not received an answer nor has compensation been offered by Defendant in response to this claim.

## FACTS

11. On or about July 27, 2013, Plaintiff was a passenger in a vehicle located near the 3100 block of Market Street.

12. Plaintiff was asleep in the vehicle with another passenger awaiting the driver to take her to her residence.

13. Unbeknownst to Plaintiff, the driver of the vehicle flagged down Officer Umbrell to request assistance in getting Plaintiff to her destination since he was too inebriated to drive her home.

14. Plaintiff was suddenly awakened when Officer Umbrell reached in the vehicle and dragged her out of the passenger side.

15. Officer Umbrell then slammed Plaintiff against the side of the vehicle, began to grab Plaintiff's neck, and continued to punch her violently.

16. In an effort to protect herself, Plaintiff began to swing back in an attempt to get Officer Umbrell off of her.

17. However, Officer Umbrell had radioed for back up and upon Officer Doe's arrival Plaintiff was thrust to the ground. (See Exhibit A – Transcript from Preliminary Hearing, p.7).

18. Immediately, Officer Doe drew his firearm pointing at Plaintiff.

19. Plaintiff's face was then slammed in to the concrete and Officer Doe shoved his knee directly in to Plaintiff's spine while handcuffing her.

20. Subsequently, Plaintiff was taken to the 18th Police Precinct located at 5510 Pine Street, Philadelphia, PA 19143.

21. Upon arrival, the officers noticed the extensive injuries Plaintiff sustained and immediately transferred her to Mercy Hospital to obtain emergent medical care for her injuries sustained during this assault. (See Exhibit B – Mercy Hospital Medical Record).

22. Due to the assault, Plaintiff sustained significant injuries to her face, extensive nerve damage in her right hand, and a dislocated herniated spinal disc.

23. As a result of the aforementioned assault, Plaintiff suffers from continuous physical pain and extensive nerve damage to entire right side of her body.

24. Currently, Plaintiff has limited mobility of her right arm and is unable to walk properly.

25. Plaintiff's nerve damage to her right arm causes her to experience perpetual numbing, loss of sensation, radiating pain from her to neck through her arm, and diminished writing ability with her dominant hand.

26. Furthermore, Plaintiff's nerve damage to her lower back and right leg prohibit her from standing or sitting up right for long periods of time.

27. Notwithstanding, the emotional distress, fear, anxiety, and permanent loss of income.

28. The Defendant Officers had no valid basis for physically accosting and arresting Plaintiff.

29. Plaintiff did not interfere with any police activity.

30. Plaintiff did not commit any crimes on July 27, 2013.

31. All criminal charges were dismissed against Plaintiff. (See Exhibit A – Transcript from Preliminary Hearing, p. 23).

32. Defendants' actions, and their motivation for theirs actions, were conscience shocking, without conscious regard or due care for the Plaintiff or the foreseeable consequences of their actions, and with such wanton and reckless disregard of the consequences as to show Defendants' deliberate indifference to the danger of harm and injury.

33. As a direct and proximate cause of Defendants' actions and inactions, Plaintiff suffered and continues to suffer deprivation of her rights, fear, horror, loss of liberty, grievous physical injuries, and the loss of the enjoyment of life, all to their great detriment and loss.

34. As a direct and proximate cause of Defendants' actions and inactions, Plaintiff suffered and was made to undergo great physical pain and horrible mental anguish requiring medical treatment, as well as loss of earning power and earning potential, all to her great detriment, financial detriment and personal loss.

35. Plaintiff's serious injuries were a foreseeable and direct result of the actions and inactions of all Defendants.

36. Defendants' violated Plaintiff's clearly established and well settled federal constitutional rights, including but not limited to her freedom to assemble, her right to substantive due process, liberty, personal security, her right to be free from unreasonable seizures, and her right to be free from the use of excessive, unreasonable and unjustified force.

37. The Defendants have with deliberate indifference, failed to be adequately trained and supervised concerning the proper provision of medical care to injured suspects, and the injuries to Plaintiff were caused by, and were foreseeable consequences of such failures.

38. In addition, the Constitutional violations suffered by Plaintiff were the result of the failure to properly train and supervise the officers with regard to the proper methods of ascertaining whether a citizen was engaging in possible criminal activity and executing an arrest of the aforementioned citizen.

**COUNT ONE**
**FOURTH AMENDMENT – UNLAWFUL SEARCH AND SEIZURE,**
**EXCESSIVE FORCE**
**Plaintiff v. Defendants, 42 U.S.C. §1983**

39. The foregoing paragraphs are incorporated herein by reference.

40. As a direct and proximate result of Defendants' actions, more particularly described above, Plaintiff's rights protected under the Fourth Amendment to be free from unreasonable search and seizure and to be free from the use of excessive force were violated and she suffered grievous bodily injury including but not limited to: nerve damage, facial lacerations, neck injury, back injury, and shoulder injury.

41. Defendants subjected Plaintiff to these deprivations of rights unreasonably, intentionally, willfully, maliciously, with deliberate indifference and/or with a reckless disregard for the natural and probable consequences of their acts, and was done without lawful justification or reason, and was designed to and did cause specific and serious physical and emotional pain and suffering in violation of Plaintiff's rights as guaranteed under 42 U.S.C. §1983 and the Fourth Amendment to the United States Constitution.

42. Plaintiff in this action is a citizen of the United States and all of the individual police officer Defendants to this claim are persons for purposes of 42 U.S.C. §1983.

43. As a direct and proximate result of the acts and omissions of Defendants, Plaintiff suffered damages as set forth above and deprivations of her rights and liberty interest at great detriment.

44. Solely as a result of Defendants' conduct, Plaintiff suffered substantial damages, including costs of this suit.

## COUNT TWO
## FOURTEENTH AMENDMENT – SUBSTANTIVE DUE PROCESS
### Plaintiff v. Defendants, 42 U.S.C. §1983

45. The foregoing paragraphs are incorporated herein by reference.

46. As a direct and proximate result of Defendants' action, more particularly described above, Plaintiff's substantive due process rights protected under the Fourteenth Amendment were

violated and she suffered grievous bodily injury, including but not limited to: nerve damage, facial lacerations, neck injury, back injury, and shoulder injury.

47. Defendants subjected Plaintiff to these deprivations of rights unreasonably, intentionally, willfully, maliciously, with deliberate indifference and/or with a reckless disregard for the natural and probable consequences of their acts, and was done without lawful justification or reason, and was designed to and did cause specific and serious physical and emotional pain and suffering in violation of Plaintiff's rights as guaranteed under 42 U.S.C. §1983 and the Fourteenth Amendment to the United States Constitution.

48. As a direct and proximate result of the acts and omissions of Defendants, Plaintiff suffered damages as set forth above and deprivations of her rights and liberty interest at great detriment.

WHEREFORE, Plaintiff demands judgment against Defendants for all available damages, including punitive damages, in addition to attorney fees and costs pursuant to 42 U.S.C. § 1988.

## JURY TRIAL DEMANDED

Pursuant to F.R.C.P.38, a trial by jury is demanded.

MFI LAW GROUP, PLLC

By: _____

Mu'min F. Islam (ID. No. 208979)
1448 South Street, Ste. 200
Philadelphia, PA 19146
(215) 735-2357

## **VERIFICATION**

I, Halimah Allen, hereby verify that I am the Plaintiff in the attached Complaint, and that the

facts set forth herein are true and correct to the best of my knowledge, information and belief. I

understand that false statements made herein are subject to the penalties of the 18 PA C.S.

§4904, relating to unsworn falsification to authorities.


Date: 12-29-14

                                                            _____
                                                                          Halimah Allen

# EXHIBIT "A"

01
#27

# First Judicial District of Pennsylvania

*51CR00291422013*
*Halimah Allen*

*Preliminary Hearing Volume 1*
*August 12, 2013*



**Court Reporting System**

*First Judicial District of Pe........*
*100 South Broad Street, Second Floor*
*Philadelphia, PA 19110*
*(215) 683-8000  FAX:(215) 683-8005*

*Original File ALLENH.V1, 24 Pages*
*CRS Catalog ID: 13120826*

Page 1

[1]      IN THE MUNICIPAL COURT OF PHILADELPHIA
[2]      FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
[3]         CRIMINAL TRIAL DIVISION
[4]
[5]            - - -
[6] COMMONWEALTH          :
[7]   VS.        : MC-51-CR-0029142-2013
[8] HALIMAH ALLEN       :
[9]
[10]            - - -
[11]      PRELIMINARY HEARING
[12]        AUGUST 12, 2013
[13]
[14]      CRIMINAL JUSTICE CENTER
[15]        COURTROOM 703
[16]      PHILADELPHIA, PENNSYLVANIA
[17]
[18]            - - -
[19]
[20] **BEFORE**:   THE HONORABLE MARVIN L. WILLIAMS, J.
[21]
[22]
[23]
[24]
[25]    GARY PASTER - COURT REPORTER - 215-683-8024

Page 2

[1]
[2] APPEARANCES:
[3]
[4]    BILL FRITZE, ESQUIRE
[5]    ASSISTANT DISTRICT ATTORNEY
[6]    FOR THE COMMONWEALTH
[7]
[8]
[9]    TROY CRICHTON, ESQUIRE
[10]   PUBLIC DEFENDERS ASSOCIATION
[11]   FOR THE DEFENDANT
[12]
[13]
[14]
[15]
[16]
[17]
[18]
[19]
[20]
[21]
[22]
[23]
[24]
[25]

Page 3

[1]         I-N-D-E-X
[2]
[3]
[4] WITNESS        DIR  CRO  REDIR  RECRO
[5]
[6] P/O JULIA UMBRELL      5   8    -    -
[7]
[8]
[9]
[10]
[11] EXHIBITS
[12]
[13] NO.      DESCRIPTION       PAGE
[14]
[15] (No exhibits were marked.)
[16]
[17]
[18]
[19]
[20]
[21]
[22]
[23]
[24]
[25]

Page 4

[1]    THE COURT OFFICER: Your Honor, we
[2] are ready on 21, Halimah Allen.
[3]
[4]
[5]    (Whereupon all witnesses were
[6] sequestered.)
[7]
[8]    MR. FRITZE: Commonwealth calls
[9]
[10] Officer Umbrell.
[11]
[12]
[13]         - - -
[14]
[15]
[16]    (Police Officer JULIA UMBRELL,
[17] U-M-B-R-E-L-L, University of Pennsylvania Police
[18] Department, Badge Number 180, after first having
[19] been duly sworn was examined and testified as
[20] follows.)
[21]
[22]
[23]         - - -
[24]
[25]

51CR00291422013
Halimah Allen

Page 5

[1]    UMBRELL - DIRECT
[2]
[3] BY MR. FRITZE:
[4] Q.  Officer Umbrell, were you on duty on July 27th of
[5] 2013 at around 1:55 in the morning?
[6] A.  Yes, I was.
[7] Q.  Did your tour of duty that day take you to 3100
[8] Chestnut Street in the City and County of Philadelphia?
[9] A.  Yes, it did.
[10] Q.  On that date and time did you come into contact with
[11] anyone that you see here today?
[12] A.  Yes, I did, the defendant.
[13]    MR. FRITZE: Your Honor, for the record the
[14]    officer has identified the defendant, Halimah
[15]    Allen, at the bar of court by point of finger.
[16] BY MR. FRITZE:
[17] Q.  Officer Umbrell, can you tell the Court what if
[18] anything occurred on that date and time?
[19] A.  Yes, I was enforcing traffic at 3100 Market. A male
[20] had approached me and stated that there was a highly
[21] intoxicated female that was in his car and he did not
[22] know her.
[23]    At that point I radioed that I had a
[24] disturbance, that I needed other vehicle to come back me
[25] up.

Page 6

[1]    At that point I approached the car. I saw
[2] the defendant sitting in the passengers side on the lap
[3] of another male. I opened the car door. I asked her to
[4] step out of the vehicle. She did step out of the
[5] vehicle. I asked her what was going on? I stated that
[6] the driver said he did not know her. She said yes he
[7] does know me.
[8]    She began to scream. There was a strong
[9] odor of alcohol on her breath. As she continued to go
[10] she started pointing in my face, continued screaming. I
[11] really was not understanding a whole lot of what she was
[12] saying.
[13]    At that point I had asked her to step to
[14] the back of the vehicle. It was on Chestnut Street and
[15] the lanes are pretty narrow. For her safety and mine I
[16] wanted her to step to the back of the vehicle.
[17]    At that point she started pointing in my
[18] face again. She turned around to reenter the vehicle and
[19] said fuck this bitch.
[20]    At that point I grabbed her by her arm. I
[21] told her get out of the car. She swung at me.
[22] Q.  Did she connect when she swung at you?
[23] A.  She did. She knocked my glasses off.
[24] Q.  Did she hit you with an open fist or closed palm?
[25] A.  Closed fist. At that point a struggle ensued. She

Page 7

[1] struck me approximately three to four times. I struck
[2] her back with a closed fist.
[3]    At that point my backup assisted me. We
[4] continued to struggle with her. At that point we took
[5] her to the ground. At that point she was still
[6] struggling. We handcuffed her. She was still resisting,
[7] kicking and trying to flail her elbows, trying to get
[8] up. She was still acting erratically.
[9]    At that point we escorted her to the
[10] wagon. She spit on the male that stated he did not know
[11] her, whose vehicle she was in. And she's also spit at
[12] one of the police officers but it did not strike him.
[13] Q.  Did you have any injuries as a result of the
[14] incident?
[15] A.  I had a cut knuckle and a scrape on my arm.
[16] Q.  Did you miss any time from work?
[17] A.  I did not.
[18] Q.  Did you finish your shift that night?
[19] A.  I did.
[20] Q.  Did anyone in that vehicle know the defendant?
[21] A.  They stated no that they didn't.
[22]    And at one point she was screaming that the
[23] car was a rental and that there was drugs in the car and
[24] there's guns in the car.
[25]    The vehicle was run. It did come back to

Page 8

[1] the driver of that vehicle, not a rental.
[2]    MR. FRITZE: Your Honor, no further
[3]    questions.
[4]    THE COURT: I'm a little bit confused.
[5]    You were doing what type of investigation?
[6]    THE WITNESS: I was enforcing traffic
[7]    because it is Mikey's Bar, it was five minutes
[8]    to two. We've had problems with the traffic.
[9]    I was actually parked in a parking lot when
[10]    the male approached me and stated can you get
[11]    this female out of my vehicle. I don't know her.
[12]    She just hopped in my vehicle.
[13]    THE COURT: Defense.
[14]    MR. CRICHTON: Thank you.
[15]
[16]
[17]    - - -
[18]
[19]
[20]    UMBRELL - CROSS
[21]
[22]
[23] BY MR. CRICHTON:
[24] Q.  Officer Umbrell, as you just stood the bar just let
[25] out, correct?

## Page 9

[1] A. Well, it was getting ready to let out. It was five
[2] of two.
[3] Q. This is Mikey's Bar over there at 32nd and Chestnut?
[4] A. Correct.
[5] Q. And the car was parked on the side of the street in
[6] close proximity to the bar?
[7] A. Whose car, sir?
[8] Q. The car that you were investigating?
[9] A. Yes, it was parked in a parking spot.
[10] Q. Now, when you first came over to the vehicle you
[11] said that my client was sitting on another males lap?
[12] A. Correct.
[13] Q. That other male did you ask him any questions?
[14] A. As I was speaking to the defendant everything she
[15] said he kept shaking his head no.
[16] Q. You said that you opened the car door, correct?
[17] A. Yes.
[18] Q. And you asked her to step out of the car?
[19] A. Yes.
[20] Q. And she wouldn't get out at that point?
[21] A. No, she did get out.
[22] Q. She got out of the vehicle?
[23] A. Yes.
[24] Q. Then you said that you and her started having a
[25] conversation?

## Page 10

[1] A. I attempted to have a conversation with her, yes.
[2] Q. And during this conversation she told you she was
[3] from New Jersey?
[4] MR. FRITZE: Objection, relevance.
[5] THE COURT: I need to get to the bottom of
[6] this. I'll allow it.
[7] THE WITNESS: I don't recall that she said
[8] she lived in Jersey.
[9] BY MR. CRICHTON:
[10] Q. So, you don't recall her telling you that she is
[11] from New Jersey and that this is her boyfriend?
[12] A. She may have. I asked her did she know him? She
[13] said yes. He said I don't know her. I was basically
[14] trying to talk to her to find out what was going on but
[15] she did not allow that.
[16] Q. So at this point when you are outside of the vehicle
[17] you said she turns and goes to go back in the vehicle?
[18] A. And says fuck this bitch.
[19] Q. At that point the person who came and got you are
[20] they back in the drivers seat at this point?
[21] A. I don't believe so. They were on the drivers side
[22] because the other officer had asked for ID.
[23] THE COURT: When you say other officer are
[24] you talking about --
[25] THE WITNESS: My backup.

## Page 11

[1] THE COURT: A Philadelphia Police Officer
[2] or a University of Penn Police Officer.
[3] THE WITNESS: A University of Penn Police
[4] Officer.
[5] BY MR. CRICHTON:
[6] Q. So, now just to be clear Ms. Allen is outside the
[7] vehicle. Your partner has arrived. The driver is
[8] outside of the vehicle, as well?
[9] A. They were both on the other side of the vehicle.
[10] Q. Where is the male who is sitting in the passengers
[11] seat?
[12] A. He is still sitting there.
[13] Q. And the conversation that you are having with Ms.
[14] Allen is taking place on the sidewalk by the passenger's
[15] seat?
[16] A. No.
[17] Q. It is taking place on the street side?
[18] A. Yes.
[19] Q. So, at that point she said fuck this bitch and turns
[20] to get back in the car?
[21] A. After I asked her to step to the back of the vehicle
[22] so we can speak.
[23] Q. At that point she turns to leave and you grabbed her
[24] wrist?
[25] A. No, she was reentering the vehicle.

## Page 12

[1] Q. In the back door, the drivers side back door?
[2] A. No, the front door.
[3] Q. The drivers side or passengers side?
[4] A. The passengers side front of the vehicle she was
[5] reentering where she had originally got out.
[6] Q. So, at that point you grabbed her?
[7] A. I grabbed her by her arm.
[8] Q. Then you pulled her back out of the car?
[9] A. As she was reentering, yes.
[10] Q. And that is when she swung on you?
[11] A. She swung at me, yes.
[12] Q. And you said she struck you in the face?
[13] A. On my side, yes, knocked my glasses off.
[14] Q. Were your glasses broken?
[15] A. They were scratched.
[16] Q. Your backup officer that came was that person a male
[17] or a female?
[18] A. It was a male.
[19] Q. When this fight that you described occurred --
[20] strike that.
[21] Then officer, shortly thereafter Ms. Allen
[22] was taken to the ground, correct?
[23] A. Yes, after the struggle.
[24] Q. And she was flailing around on the ground but she
[25] was eventually handcuffed?

51CR00291422013
Halimah Allen

Preliminary Hearing Volume 1
August 12, 2013

Page 13

[1] **A.** Yes.

[2] **Q.** You said that she had spit at who we'll call the

[3] complainant, the person who came and got you?

[4] **A.** Yes, the reporting person, yes.

[5] **Q.** And you said that she also spit in the direction of

[6] the other officer but it did not --

[7] **A.** Right.

[8] **Q.** So no spit landed on the officer?

[9] **A.** No, he stepped out of the way.

[10] **Q.** Was she taken to the hospital?

[11] **A.** I believe she was.

[12] **Q.** You yourself you said that you sustained -- you had

[13] an abrasion on your arm?

[14] **A.** Yes.

[15] **Q.** You did not go to the hospital?

[16] **A.** No.

[17] **Q.** You did not miss any time from work?

[18] **A.** No.

[19] **MR. CRICHTON:** I have no further questions.

[20] **MR. FRITZE:** Nothing further, Your Honor.

[21] **THE COURT:** I have a question.

[22] What was she being investigated for or in

[23] custody for and did you ever call Philadelphia

[24] Police?

[25] **THE WITNESS:** Did I call Philadelphia

Page 14

[1] Police?

[2] THE COURT: Did anybody ever call

[3] Philadelphia Police?

[4] THE WITNESS: No -- I don't understand why?

[5] My sector runs from -- our sector, our

[6] jurisdiction runs from 30th Street to 43rd,

[7] Woodland to Powelton.

[8] THE COURT: And that is for what, though?

[9] This was an investigation for what?

[10] THE WITNESS: This was an investigation to

[11] find out what was going on. Someone was in a

[12] vehicle that did not belong there.

[13] THE COURT: And Philadelphia Police was

[14] never called?

[15] THE WITNESS: No, we don't call Philadelphia

[16] Police. That's our jurisdiction.

[17] THE COURT: I see.

[18] Anything further.

[19] MR. FRITZE: Nothing further, Your Honor.

[20] Commonwealth would rest.

[21]

[22]

[23] (WITNESS EXCUSED)

[24]

[25]

Page 15

[1] **MR. CRICHTON:** No evidence.

[2] Just argument, Your Honor.

[3] **THE COURT:** And while argument is being

[4] given I want the Commonwealth to address in this

[5] kind of situation or any kind of situation I

[6] want the Commonwealth to address the policing

[7] powers.

[8] Go ahead.

[9]

[10]

[11] (ARGUMENT)

[12]

[13]

[14] **MR. CRICHTON:** Well, Your Honor, with

[15] regards to that aggravated assault and the

[16] resisting arrest here I argue that there is --

[17] well, first of all with regards to the

[18] aggravated assault. The officer did not sustain

[19] any injuries. She said she was struck in the

[20] face but there were no injuries in her face. She

[21] had a scrape on her arm presumably from taking

[22] my client to the ground and subduing her.

[23] She did not go to the hospital. She did

[24] not miss any time from work. She did not even

[25] have a bruise on her face. Her glasses were

Page 16

[1] scraped. Therefore there was no bodily injury

[2] in this matter. I ask that the ag assault be

[3] discharged.

[4] In the same vein the resisting arrest, Your

[5] Honor, the resisting arrest requires a lawful

[6] arrest. In this matter there has been no lawful

[7] arrest.

[8] There's an argument happening outside of a

[9] bar between people who despite what they say

[10] common sense says they know each other. When

[11] the officer comes up to the vehicle my client is

[12] sitting on someone's lap in the vehicle.

[13] They're arguing, they're yelling. She goes

[14] to go back in the vehicle and says -- they have

[15] this conversation. She turns to leave.

[16] For what lawful arrest; I don't know.

[17] There's been no evidence of a lawful arrest

[18] here. And therefore the resisting arrest charge

[19] must also be dismissed.

[20] MR. FRITZE: Your Honor, as for the police

[21] power of the University of Penn they have the

[22] same exact policing power as the Philadelphia

[23] Police Department. Just like Septa, just like

[24] Temple University they all have certain

[25] geographic areas where they are assigned and

Page 17

[1] they have the same exact powers. They are a
[2] police department. They have a detective agency
[3] and they have everything. They work in tandem
[4] with Philadelphia Police.
[5]    But many times out of the 18th District,
[6] that is what you are going to see the University
[7] of Penn because they cover such a large area.
[8]    So, their police department is just the
[9] same. They have the same rights, same privileges
[10] as any other Philadelphia Police Department.
[11]    As far as the aggravated assault here, Your
[12] Honor, the officer is a protected class because
[13] she is a police officer.
[14]    So, all that is required at a preliminary
[15] hearing stage and per the statute is that some
[16] bodily injury is caused, a simple assault is
[17] cause to a police officer. That is what we have
[18] here.
[19]    THE COURT: I'm a little bit confused as to
[20] what crime was committed for the officer to
[21] touch her and to place her under arrest. That's
[22] what I'm looking for.
[23]    MR. FRITZE: A citizen came to her and said
[24] a woman I don't know is in my car. I need you
[25] to come and remove this person from my car.

Page 18

[1] That then gave her the ability because she is
[2] helping the person who does not have the
[3] defendant to get that person out of his
[4] property.
[5]    That's why she has the ability to go and to
[6] investigate and pull the person out of the car.
[7] That is why she held that civilian there to talk
[8] to him to find out if she knew the woman. I
[9] asked her does anybody in that car know that
[10] person? No, nobody in the car knew the person.
[11]    So, that's why she had the ability to go to
[12] find out what was going on.
[13]    She definitely at that point had more than
[14] enough probable cause to probably make an arrest
[15] because the defendant did not have permission to
[16] be in the vehicle. She was not charged with that
[17] because of ... that she did on the
[18] officer, ... that she resisted
[19] arrest.
[20]    Once you punch a police officer you are
[21] obviously going to be placed under arrest. You
[22] are assaulting an officer. But, there was enough
[23] there, enough probable cause there to arrest her
[24] for being in some one else's vehicle at that
[25] point.

Page 19

[1] So, that is why she had that power to
[2] arrest.
[3]    But, it really came down the that civilian
[4] saying there is a person in the front seat of my
[5] car that I don't know. Can you come get them out
[6] of there and that is why she went over there.
[7] Otherwise she was just conducting traffic doing
[8] what she needed to do because she was pulled
[9] into it by that civilian.
[10]    Then the defendant escalated everything by
[11] punching her not once but five or six times,
[12] spitting at the other officer and spitting at
[13] the civilian.
[14]    So, Your Honor, because of the bodily
[15] injury that we have, the officer is a protected
[16] class, we ask that you hold it on the F-2
[17] aggravated assault.
[18]    MR. CRICHTON: Your Honor, briefly, then you
[19] are going to have to wonder why that complaining
[20] witness is not here today and why she is not
[21] charged with the underlying charge of trespass
[22] or I don't now what the charge is for breaking
[23] into someone's car.
[24]    THE COURT: I was looking for an underlining
[25] charge because everything relates to the officer

Page 20

[1] and not to the initial investigation at all.
[2]    MR. FRITZE: Right, and Your Honor, it comes
[3] down to what our office felt was appropriate to
[4] charge. We don't need to charge someone with
[5] every single crime that they committed day.
[6]    And for this particular matter I think the
[7] victim was just happy to have the defendant out
[8] of her car.
[9]    And likely our office probably would not
[10] have arrested if had the defendant just gotten
[11] out of the car and left. The police department
[12] probably would not have arrested and she
[13] wouldn't have been charged.
[14]    THE COURT: I go to the initial issue which
[15] was the investigation. I saw no charge at
[16] all. All of this is just pertaining to the
[17] officer and I'm looking for initial charges of
[18] either trespass or something and I saw nothing
[19] here. That is why I am questioning.
[20]    MR. FRITZE: It is just they decided not to
[21] charge. And it could be maybe perhaps the
[22] witness did not want to charge and our office
[23] declined to charge, too.
[24]    But there is still a crime that occurred
[25] afterwards with the aggravated assault, with the

51CR00291422013
Halimah Allen

Page 21

[1]  resisting.

[2]      Your Honor, she was charged with disorderly

[3]  conduct. She was also charged with recklessly

[4]  endangering another person. And I would say

[5]  that kind of flows into it.

[6]      **THE COURT:** You got to leapfrog here from

[7]  the initial charge -- I'll take you through it.

[8]  The initial charge an investigation. You have

[9]  all of this going on and then absolutely nothing

[10]  and everything is pertinent to the officer only

[11]  and nothing about the investigation or nothing.

[12]      **MR. FRITZE:** Your Honor, for a vehicle you

[13]  can't charge trespass on a vehicle. We had this

[14]  last week with Judge Simmons.

[15]      **THE COURT:** Well, what could she have

[16]  charged then?

[17]      **MR. FRITZE:** You could have charged

[18]  attempted theft -- no, you can't even charge

[19]  attempted theft because she has to have the

[20]  intent to go in there and take the vehicle. We

[21]  don't know what she was doing but she was in

[22]  someone's property she was not suppose to be in.

[23]      You can charge criminal trespass if you

[24]  live in a motor home. There has to be some sort

[25]  of --

Page 22

[1]  It gets real loose, doesn't it?

[2]      MR. FRITZE: Which is why she probably

[3]  wouldn't have been arrested. Had she gotten out

[4]  of the car --

[5]      THE COURT: Do you see my point?

[6]      MR. FRITZE: Had she gotten out of the car

[7]  and said oh, okay, sorry. I was in somebody

[8]  else's car.

[9]      THE COURT: You see something that started

[10]  with nothing and all of a sudden I see major

[11]  charges here and I am saying where is the

[12]  middle.

[13]      MR. FRITZE: Right, and that is the

[14]  problem. The problem is we wouldn't have

[15]  charged her. She wouldn't have been charged

[16]  with anything.

[17]      THE COURT: We are discussing this so there

[18]  can be a record so people can see what the Court

[19]  is questioning.

[20]      MR. FRITZE: Right, but there wouldn't have

[21]  been an initial charge to charge her with. It is

[22]  just that she was told by a police officer get

[23]  out of this car, the owner of this vehicle says

[24]  that they don't know you. Let me investigate and

[25]  figure out what is going on.

Page 23

[1]      She starts screaming, she starts punching,

[2]  she starts spitting. That is why she is charged

[3]  with what she is charged with.

[4]      **THE COURT:** All charges are dismissed.

[5]      **MR. CRICHTON:** Thank you, Your Honor.

[6]

[7]

[8]      (HEARING CONCLUDED)

[9]

[10]

[11]

[12]

[13]

[14]

[15]

[16]

[17]

[18]

[19]

[20]

[21]

[22]

[23]

[24]

[25]

Page 24

[1]

[2]      C-E-R-T-I-F-I-C-A-T-E

[3]

[4]      I HEREBY CERTIFY THAT THE PROCEEDINGS

[5]  AND EVIDENCE ARE CONTAINED FULLY AND ACCURATELY IN

[6]  THE NOTES TAKEN BY ME ON THE TRIAL OF THE ABOVE

[7]  CAUSE, AND THIS COPY IS A CORRECT TRANSCRIPT OF THE

[8]  SAME.

[9]

[10]

[11]      GARY PASTER

[12]      COURT REPORTER

[13]

[14]

[15]

[16]

[17]      (THE FOREGOING CERTIFICATION

[18]  OF THIS TRANSCRIPT DOES NOT APPLY TO ANY

[19]  REPRODUCTION OF THE SAME BY ANY MEANS UNLESS

[20]  UNDER THE DIRECT CONTROL AND/OR SUPERVISION

[21]  OF THE CERTIFYING REPORTER.)

[22]

[23]

[24]

[25]

Court Reporting System (Generated 2013/12/16 13:12:24)

# EXHIBIT "B"

## MERCY PHILADELPHIA
## PRIMARY

Allen, Halimah
DOB: 8/18/1988 F24
Wt/Ht: 54.4 Kg 160 cm
MedRec: M060650017
AcctNum: PA1301103659

―――――――――――――――――― Patient Data ――――――――――――――――――

Complaint: (PC) KNEE HIGH
Triage Time: Sat Jul 27, 2013 03:29                        ED Attending: Swisher, MD, Loice
Urgency: ES14                                              Primary RN: Womack,RN, Latasha
Bed: ED ED
Initial Vital Signs: 7/27/2013 03:27
BP:132/87 (Sitting)                                        R:18 (Non-labored)
P:97 (Sitting)                                             T:98.4 (Oral)
O2 sat:98 on Room Air                                      Pain:8 (Achy)

### ADMIN

*PATIENT DATA CHANGE:* Primary Nurse changed from (none) to Latasha Womack,RN.
  {03:31 LWOM}
ADT 9451123 by Interface
 DEMOGRAPHICS:
  Home Phone: (215)000-0000
  Work Phone: (000)000-0000
  Patient Street: 61 W SHARPNACK ST
  Patient Street 2:
  Patient City: PHILADELPHIA
  Patient State: PA
  Next of Kin:
  Next of Kin Relation:
  Next of Kin Home Phone:
  Next of Kin Work Phone:. {03:35}
 A08 9451123 by Interface, Phone: (215)000-0000, Payment: (none), Race: AFRICAN
  AMERICAN/BLACK, Zip Code: 19119, SSN: 176704471, PCP Doctor: Unknown Doctor, Ethnicity:
  (none). {03:36}
- ADT 9451128 by Interface
 DEMOGRAPHICS:
  Home Phone: (215)000-0000
  Work Phone: (000)000-0000
  Patient Street: 61 W SHARPNACK ST
  Patient Street 2:
  Patient City: PHILADELPHIA
  Patient State: PA
  Next of Kin:
  Next of Kin Relation:
  Next of Kin Home Phone:
  Next of Kin Work Phone:. {03:37}
ADT 9451130 by Interface
 DEMOGRAPHICS:
  Home Phone: (215)000-0000
  Work Phone: (000)000-0000
  Patient Street: 61 W SHARPNACK ST
  Patient Street 2:
  Patient City: PHILADELPHIA
  Patient State: PA
  Next of Kin:
  Next of Kin Relation:
  Next of Kin Home Phone:
  Next of Kin Work Phone:. {03:37}
ADT 9451146 by Interface
 DEMOGRAPHICS:
  Home Phone: (215)000-0000
  Work Phone: (000)000-0000

―――――――――――――――――――――――――――――――――――――――――――――――

Prepared: Sat Jul 27, 2013 07:01 by  Page: 1 of 5
Documentation of patient data change=provider contact date/time. Patient care>Documentation:Time stamps may not reflect time care provided.

## MERCY PHILADELPHIA
## PRIMARY

Allen, Halimah
DOB: 8/18/1988 F24
Wt/Ht: 54.4 Kg 160 cm.
MedRec: M000650017
AcctNum: PA1301103659

Patient Street: 61 W SHARPNACK ST
Patient Street 2:
Patient City: PHILADELPHIA
Patient State: PA
Next of Kin:
Next of Kin Relation:
Next of Kin Home Phone:
Next of Kin Work Phone: (0135)
Attending changed from: (none) to Loice Swisher, MD. (0250 LSW1)

**VITAL SIGNS** (Sat Jul 27, 2013 03:29 NAE)
*VITAL SIGNS:* BP: 132/87 (Sitting), Pulse: 97 (Sitting), Resp: 18 (Non-labored), Temp: 98.4
    (Oral), Pain: 8 (Achy), O2 sat: 98 on Room Air, Time: 7/27/2013 03:27.

**PRESENTING PROBLEM** (Sat Jul 27, 2013 03:29 NAE)
Presenting problems: Knee Injury-Pain-Swelling.

**TRIAGE** (Sat Jul 27, 2013 03:29 NAE)
*TRIAGE NOTES:* Pt arrives in Police Custody ambulatory with c\o knee pain with multiple
    abrasions s\p assault leading to arrest.
*PATIENT:* NAME: Allen, Halimah, GENDER: female, DOB: Thu Aug 18, 1988, TIME OF GREET:
    Sat Jul 27, 2013 03:23, KG WEIGHT: 54.4, HEIGHT: 160cm, MEDICAL RECORD NUMBER:
    M000650017, ACCOUNT NUMBER: PA1301103659.
*ADMISSION:* URGENCY: ESI4, ADMISSION SOURCE: Street/Highway, TRANSPORT: Police
    Custody, BED: WAITING.
*VITAL SIGNS:* BP 132/87, (Sitting), Pulse 97, (Sitting), Resp 18, (Non-labored), Temp 98.4,
    (Oral), Pain 8, (Achy), O2 Sat 98, on Room Air, Time 7/27/2013 03:27.
*COMPLAINT:* (PC) KNEE HIGH.
*ASSESSMENT:* Assessment: Knee pain, Symptoms began 1 hour ago, Airway is patent,
    Respirations are unlabored, Speech is coherent, Patient is AAO X 3, Skin is warm, Skin is dry.
*PAIN ASSESSMENT:* Patient complains of pain described as, aching, on a scale 0-10 patient
    rates pain as 9, Pain is constant, No aggravating factors, No relieving factors.
*LMP:* Last menstrual period is unknown.
*TREATMENTS IN PROGRESS:* None.
*FALL RISK ASSESMENT:* Able to rise in a single movement; no loss of balance with steps(0),
    Total score 0, Score less than 5. Patient not high risk for falls.
*TRIAGE SCREENING:* Patient denies suicidal ideation, Patient denies presence of domestic
    violence, No history of Infectious disease.
*ADVANCED DIRECTIVES:* No advanced Directives.
*PROVIDERS:* TRIAGE NURSE: Anthony Esposito, RN.
*PREVIOUS VISIT ALLERGIES:* No Known Drug Allergies.

**KNOWN ALLERGIES**
*No Known Drug Allergies*

**CURRENT MEDICATIONS** (0430 NAE)
*Flovent:* 2 Puffs Inhaler 2 Times a day.
*Med and Allergy History from Patient*
*ProAir HFA:* 2 Puffs Inhaler Every 4 hours PRN. Entered brand: Albuterol Sulfate HFA.

**MEDICATION RECONCILIATION** (0357 LSW1)
*Flovent – Reviewed With Patient :* 2 Puffs Inhaler 2 Times a day.
*Med and Allergy History from Patient – Reviewed With Patient :* (No Reconciliation
    Information).