IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HALIMAH ALLEN,<br><br>              **Plaintiff,**<br><br>   v.<br><br>**POLICE OFFICER JULIA UMBRELL et al.,**<br><br>              **Defendants.** | CIVIL ACTION<br>NO. 14-7334 |

<u>MEMORANDUM</u>

**PAPPERT, J.**                                                                                          October 9, 2015

      Defendant Trustees of the University of Pennsylvania ("the University") has filed a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Count III of Plaintiff Halimah Allen's ("Allen") complaint, alleging a violation of her civil rights under the Civil Rights Act of 1964 (42 U.S.C. § 1983) ("Civil Rights Act").  For the reasons stated below, the Court grants the University's Motion.

**I.**

      On July 27, 2013, Allen was asleep in a car near 3100 Market Street in Philadelphia. (Pl.'s Second Amended Complaint, ("Pl.'s Sec. Amend. Compl."), ECF No. 11, ¶ 15.)  The driver of the car flagged down Defendant Officer Umbrell ("Umbrell") to ask for help in getting Allen to her destination because the driver was allegedly too drunk to drive her home.  (*Id.* at ¶ 17.)  Allen alleges she was awakened by Umbrell when Umbrell reached into the car and dragged her out the passenger side.  (*Id.* at ¶ 18.)  Allen contends that Umbrell then slammed her against the car, grabbed her neck, and began to punch her.  (*Id.* at ¶ 19.)  Allen began swinging back at Umbrell in an effort to protect herself.  (*Id.* at ¶ 20.)  Allen alleges that when Umbrell's

1

backup, Defendant Officer Doe ("Doe"), arrived at the scene, Allen was thrust to the ground. (*Id*. at ¶ 21.)  Doe allegedly drew his firearm and pointed it at Allen.  (*Id*. at ¶ 22.)

Allen alleges Doe slammed her into the concrete and shoved his knee directly into Allen's spine while handcuffing her.  (*Id*. at ¶ 23.)  Allen was taken to the 18th Police Precinct where she was examined and subsequently sent to Mercy Hospital to obtain medical care for her injuries.  (*Id*. at ¶¶ 24-25.)  Allen alleges that she sustained significant injuries to her face, extensive nerve damage in her right hand, and a dislocated herniated spinal disc.  (*Id*. at ¶ 26.)

Allen filed her original Complaint against Doe, Umbrell, and the University of Pennsylvania.  (ECF No. 1.)  Defendants filed a Motion to Dismiss (ECF No. 3.)  Rather than respond to that motion, Allen filed an Amended Complaint which added The Trustees of the University as a party.  (ECF No. 6.)  Defendants filed a Motion to Dismiss Allen's Amended Compliant.  (ECF No. 9.)  Allen then filed her Second Amended Complaint (ECF No. 11.), alleging claims against Umbrell and Doe for assault and battery ("Count I"), and intentional infliction of emotional distress ("Count II"); Allen additionally alleges a violation of her civil rights under the Civil Rights Act against the University for failure to train its officers ("Count III").  The University moves to dismiss Count III of the Second Amended Complaint.  Allen has not requested leave to amend her complaint for the third time, though another amendment would likely be futile at this point.

## II.

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complaint's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  Courts must "take as true all the factual allegations of the [complaint] and

the reasonable inferences that can be drawn from them." *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010). However, the Court "need not credit a [party's] 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citation omitted).

To withstand a motion to dismiss, the complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler*, 578 F.3d at 210-11 (citation omitted). A motion to dismiss will be granted if the factual allegations in the complaint are insufficient "to raise the right of relief above the speculative level." *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 169 (3d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

### III.

To be liable under § 1983, a defendant must be acting under color of state law. Although the University of Pennsylvania is a private institution, its police officers are all municipal police officers certified through the Commonwealth of Pennsylvania Municipal Police Officers Training and Education Commission. *See Fleck v. Trustees of Univ. of Pennsylvania*, No. 12–3765, 2014 WL 460652, at *8 (E.D. Pa. Feb.5, 2014) (internal citations omitted). Accordingly, the University is a state actor for purposes of § 1983.

A municipality cannot be held liable for the unconstitutional acts of its employees on a theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658,

3

691 (1978).  For liability to attach under § 1983, the municipality itself must cause the constitutional violation at issue.  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).  Plaintiffs must demonstrate that the violation of their rights was caused by a policy, custom or practice of the municipality.  *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996).  "Failure to" claims—failure to train, failure to supervise, or failure to discipline—are generally considered a subcategory of municipal policy or practice liability.  *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014).

Where a plaintiff alleges that the municipal policy that caused the injury in question concerned a failure to train, supervise or discipline, the plaintiff must demonstrate that (1) the failure amounted to a deliberate indifference to the rights of persons with whom the municipal employee comes in contact; and (2) the municipality's policy of failing to train, supervise, or discipline actually caused the constitutional injury.  *City of Canton*, 489 U.S. at 388; *see also Montgomery v. De Simone*, 159 F.3d 120, 126-27 (3d Cir. 1998).  Allen alleges that the Officers "used excessive force … which resulted in a deprivation of [her] constitutional rights under the Fourth Amendment of the United States Constitution."[1]  (Pl.'s Sec. Amend. Compl., ¶ 41.)  She contends that the University "fail[ed] to train Defendants Umbrell and/or Doe in the proper way [to] stop a person suspected of a crime without the use of physical violence who poses no physical threat and/or harm under the same circumstances [as] Allen."  (*Id*. at ¶ 42.)

Failure to adequately train, supervise, or discipline municipal employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations.

---

[1] In the introductory paragraph of her Second Amended Complaint, Allen alleges that the University's failure to train the officers was a violation of her First and Fourteenth Amendment rights.  Because Allen fails to allege any facts supporting these claims, the Court need not consider them.  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests." (citing *Twombly*, 550 U.S. 544 at n. 3)).

4

*Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407-09 (1997). Although it is possible to maintain a claim of failure to train without demonstrating such a pattern, *Bryan County* makes clear that the plaintiff's burden in such a case is high. *Id.* at 409 ("In leaving open in *Canton* the possibility that a plaintiff might succeed in carrying a failure-to-train claim without showing a pattern of constitutional violations, we simply hypothesized that, in a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations"); *accord Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004) ("[A] municipal policy or custom that amounts to deliberate indifference … typically requires proof of a pattern of underlying constitutional violations. Although it is possible, proving deliberate indifference in the absence of such a pattern is a difficult task.") (citations omitted). Without a pattern of past violations, a plaintiff can go forward on a single violation theory if they can "show both contemporaneous knowledge of the offending incident … and circumstances under which [a municipal] supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." *Montgomery*, 159 F.3d at 127 (citing *Bonenberger v. Plymouth Twp.,* 132 F.3d 20, 25 (3d Cir. 1997)).

Allen fails to adequately plead deliberate indifference under a pattern of violations theory. She does not allege facts which would establish that the University was aware of similar acts of violence committed by officers. She merely contends that "the [University], through its officers and officials, has a history of verbal and physical abuse and police brutality." (Pl.'s Sec. Amend. Compl., ¶ 43.) Allen claims that "[the University] permitted, tolerated, ratified, overlook[ed], and/or approved constitutional violations of citizens by its officers." (*Id.* at ¶ 73.) Other than vague and conclusory references to a "history" of brutality, Allen alleges no specific

instances of excessive force being used, much less a pattern.  Allen thus fails to sufficiently plead a "pattern of underlying constitutional violations" that "amounts to deliberate indifference."

Allen additionally argues – in her Response brief – that she has sufficiently pled a single violation theory.  In addition to the fact that a party cannot raise new claims for the first time in a brief, Allen fails to adequately plead deliberate indifference under a single violation theory.  In order to meet the high burden under a single violation theory, Allen must allege "sufficient factual matter" showing (1) that the University had contemporaneous knowledge of the incident, and (2) circumstances where the University's action or inaction could be found to have communicated a message of approval.  *Montgomery*, 159 F.3d at 127.  The single violation exception only applies when "[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that the policymaker['s] decision not to train the officer reflected 'deliberate indifference' to the obvious consequence of the policymaker['s] choice – namely, a violation of a specific constitutional or statutory right."  *Bd. of Cnty. Comm'rs*, 520 U.S. at 409.

Allen fails to state any allegations showing that police-citizen interactions of the type Allen experienced are likely to recur with the any sort of frequency, much less the frequency contemplated by the *Bd. of Cnty. Comm'rs* Court in creating the single violation exception.[2] Additionally, Allen alleges no facts showing that the University had contemporaneous knowledge of the incident. She has also failed to assert any action or inaction by the University that could be interpreted as encouraging the Officer's actions.  Allen thus fails to show deliberate indifference under a single violation theory.

---

[2] Allen relies on *Tirado v. Montgomery Cnty., Pa.*, No. 12-CV-00552, 2013 WL 1285487, at *1 (E.D. Pa. Mar. 29, 2013) to support her single violation argument.  In Tirado, the plaintiff was allegedly beaten by two prison guards in a correctional facility.  *Tirado* is distinguishable from this case, particularly given the constant interaction between guards and inmates in the prison setting and the inherent likelihood that situations like those described in *Tirado* could recur.

Stripping away the threadbare recitals and mere conclusory allegations in the complaint as we must, *Iqbal*, 556 U.S. at 678, Allen fails to state a claim for municipal liability under *Monell* against the University.  The University's Motion to Dismiss Count III is granted.


BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.